UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

INSTITUTE OF GOVERNMENTAL
ADVOCATES; JERICHO: A VOICE
FOR JUSTICE; LAW OFFICES OF
TIMOTHY YARYAN; LOS ANGELES
POLICE PROTECTIVE LEAGUE;
CALIFORNIA PROFESSIONAL
FIREFIGHTERS,

        Plaintiffs,

                            2:09-cv-00693 FCD DAD
   v.

DEBRA BOWEN, in her official
capacity as California
Secretary of State,

        Defendant.
_____/

----oo0oo----

This matter is before the court on defendant Debra Bowen's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the basis that the subject matter of plaintiffs' claim is not ripe for review. Plaintiffs Institute of Governmental Advocates, Jericho: A Voice for Justice, Law

Offices of Timothy Yaryan, Timothy Yaryan, Los Angeles Police Protective League, and California Professional Firefighters (collectively, "plaintiffs") oppose the motion. For the reasons set forth below,[1] defendant's motion to dismiss is GRANTED.

**BACKGROUND**

Plaintiffs are lobbyists, lobbying firms, lobbyist employers, and an association representing professional lobbyists and lobbying firms active in California. (Id. ¶¶ 5-9.) In 2008, the California State Legislature enacted AB 583, which, *inter alia*, requires defendant to place upon the June 8, 2010 California statewide primary ballot the question of whether the State of California should implement publicly-financed elections for the office of California Secretary of State. (Compl., filed Mar. 13, 2009, ¶ 2.) If approved, the funds for the publicly-financed elections would derive, in part, from a new flat tax imposed on lobbyists, lobbying firms, lobbyist employers, and lobbying coalitions of $700 per two-year legislative session. (Id.) Specifically, AB 583, § 7 reads, in relevant part:

> The Secretary of State shall . . . submit Sections 1, 2, 3, 4, 5, 6, and 8 of this act for approval by the voters at the June 8, 2010, statewide primary election. . . . [A]ll ballots of the June 8, 2010, primary election shall have printed thereon as the ballot label the following: "CALIFORNIA FAIR ELECTIONS ACT. Creates a voluntary system for candidates for Secretary of State to qualify for a public campaign grant if they agree to strict spending limits and no private contributions. . . . Funded by voluntary contributions and by an annual fee on lobbyists, lobbying firms, and lobbyist employers."

(Id. ¶ 22.)

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. L.R. 78-230(h).

**ANALYSIS**

Plaintiffs contend that AB 583 is unconstitutional because it (1) imposes a tax on the exercise of protected First Amendment activities; (2) imposes a flat tax that has no connection to the State's actual costs of administering it otherwise lawful regulation of lobbying activities; and (3) imposes a discriminatory tax that violations plaintiffs' Fourteenth Amendment right to equal protection by singling out a category of speech engaged in by specific participants in the lobbying process while excluding others from the obligation to pay the tax. (Compl. ¶ 24.) Plaintiffs also contend that the mere submission to voters of the provisions in AB 583 is unconstitutional. (Id. ¶ 25.) Plaintiffs seek an injunction removing the sections of AB 583 from the June 8, 2010 California statewide primary ballot, or any other ballot. Defendant contends that plaintiffs' claims are not ripe for judicial review.

The justiciability doctrine of ripeness is "peculiarly a question of timing," Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 140 (1974), which "demands that litigants state a claim on which relief can be granted and that litigants' asserted harm is 'direct and immediate' rather than speculative or hypothetical." Hillblom v. United States, 896 F.2d 426, 430 (9th Cir. 1990). "For adjudication of constitutional issues, concrete legal issues presented in actual cases, not abstractions, are requisite." United Pub. Workers v. Mitchell, 330 U.S. 75, 89 (1947). The case must present "a real and substantial controversy admitting of specific relief through a decree of a

conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." <u>Aetna Life Ins. v. Haworth</u>, 300 U.S. 227, 240-41 (1937).  "The 'basic rationale' for the ripeness doctrine 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements' over policy." <u>Hillblom</u>, 896 F.2d at 430 (quoting <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 148 (1967)).

"There are two components to ripeness: constitutional ripeness and prudential ripeness." <u>United States v. Braren</u>, 338 F.3d 971, 975 (9th Cir. 2003) (citing <u>Thomas v. Anchorage Equal Rights Comm'n</u>, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)).

**A.   Constitutional Ripeness**

In order to meet the threshold of constitutional ripeness for declaratory judgement, the facts alleged must demonstrate, under all the circumstances, "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Id.</u> (quoting <u>Maryland Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941)).  In assuring whether the jurisdictional prerequisite is met, courts must "consider whether the plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" <u>Thomas</u>, 220 F.3d at 1139 (quoting <u>Babbitt v. United Farm Workers Nat'l Union</u>, 442 U.S. 289, 298 (1979)).

The Supreme Court has noted that under certain circumstances, "the implementation of a governmental electoral process that subjects" conduct subject to constitutional

protections "to a majoritarian vote" can be a constitutional injury by itself. Santa Fe Indep. Sch. Dist. v. Doe ("SFISD"), 530 U.S. 290, 314 (2000). In SFISD, the plaintiffs challenged a school district policy that authorized two student elections in regards to prayers before high school football games; the first election decided whether pre-game invocations should be delivered and the second decided who the speaker would be. Id. at 294-98. The Court also noted that the policy evolved from "the long-sanctioned office of 'Student Chaplain' to the candidly titled 'Prayer at Football Games' regulation," indicating that the school district "intended to preserve the practice of prayer before football games. Id. at 309. After the school district enacted the policy, the students chose to allow a student to say a prayer and selected a student to deliver the prayer. Id. at 297-98. The Court held that based upon the content and historical context of the policy, the simple enactment "with the purpose of endorsement of student prayer, was a constitutional violation" and that the Court "need not wait for the inevitable to confirm and magnify the constitutional injury." Id. at 316 ("Government efforts to endorse religion cannot evade constitutional reproach based solely on the remote possibility that those attempts may fail.")

However, the Ninth Circuit has specifically rejected the position that "the mere existence of a statute can create a constitutionally sufficient direct injury"; "[r]ather, there must be a genuine threat of imminent" that the statute will be enforced. Thomas, 220 F.3d at 1139; see San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126-27 (9th Cir. 1996). In

<u>Thomas</u>, the plaintiffs, two landlords, challenged a statute that outlawed certain forms of discrimination in rental housing based upon marital status. <u>Id.</u> at 1137. The court held that because the landlords only expressed an "intent" to violate the law on come uncertain day in the future, there was no specific threat or even hint of future enforcement or prosecution, and there was not a history of past criminal prosecution or civil enforcement under the statute, the plaintiffs did not confront "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." <u>Id.</u> at 1141 (quoting <u>Babbitt</u>, 442 U.S. at 298). Thus, the claim was not constitutionally ripe for review. <u>Id.</u> (citing <u>Ohio Forestry Ass'n, Inc. v. Sierra Club</u>, 523 U.S. 726, 732 (1998)).

The injury of self-censorship, though, is a constitutionally sufficient to set forth a justiciable claim. <u>Cal. Pro-Life Council, Inc. v. Getman</u>, 328 F.3d 1088, 1093 (9th Cir. 2003). In <u>Getman</u>, the Ninth Circuit held that the plaintiff's refrain from engaging in planned communications and associated expenditures based upon a reasonable fear of enforcement of the enacted statute at issue was sufficient injury to create a justiciable case or controversy. The court noted that it is well established that "one does not have to await the consummation of threatened injury to obtain preventative relief." <u>Id.</u> at 1094 (quoting <u>Ariz. Right to Life Political Action Comm. v. Bayless</u>, 320 F.3d 1002, 1006 (9th Cir. 2003)). However, the court also noted that "the self-censorship door . . . does not open to every plaintiff." <u>Id.</u> at 1095. In a claim involving free speech, the potential plaintiff's intended speech must "arguably fall[]

6

within the statute's reach," and the potential plaintiff "must have an actual and well-founded fear that the law will be enforced against him or her." Id. (internal quotations and citations omitted).

In this case, the threat of application or enforcement of the allegedly unconstitutional provisions in AB 583 – though theoretically possible – is not reasonable or imminent. Unlike the policy at issue in SFISD and the statute at issue in Getman, the taxation provisions of AB 583, the crux of plaintiffs' complaint, have not been approved by the voters or enacted. Indeed, these provisions may never be enacted. As such, like in Thomas, the threat of enforcement is wholly contingent upon the occurrence of unforeseeable events, specifically the adoption of the subject provisions by voters in the June 8, 2010 election. Similarly, unlike in Getman, the speech at issue in this case cannot arguably fall within the statute's reach because the contested provisions of AB 583 have not yet been enacted. Thus, plaintiffs do not have an actual, well-founded, or reasonable fear that the disputed provisions will be enforced against them. Cf. LSO, Ltd. v. Stroh, 205 F.3d 1146, (9th Cir. 2000) (holding that there was a realistic threat of future interference where the defendants enforced or threatened to enforce the regulation in the past, the defendants had conducted raids on similarly situated organizations, the plaintiff intended to engage in the proscribed conduct at issue, and the plaintiff had already engaged in self-censorship).

Furthermore, plaintiffs have not set forth any evidence or argument that they have altered their behavior as a result of AB

583.  Indeed, to the extent the contested provisions of AB 583 are approved by the voters on June 8, 2010, the $700 per term fee would not affect plaintiffs until sometime between November 1 and December 31 of 2010.[2]  As such, the alleged harm is not imminent.

While plaintiffs rely heavily on the Supreme Court's decision in SFISD to support the proposition that the mere placement of these provisions on the ballot causes them injury, the facts of this case are markedly different from the facts before the Court in SFISD.  The Court's examination of the policy in SFISD was premised upon its awareness "of the history and context of the community and forum."  530 U.S. at 317.  Its holding was premised upon the conclusion that those circumstances demonstrated that the district did not provide a constitutional safe harbor.  Id.  However, unlike the evidence submitted in Santa Fe, plaintiffs have failed to present any allegations or evidence of a history of conduct that demonstrates a continuous and pervasive agenda by defendant to engage in the allegedly unconstitutional conduct at issue in AB 583.  Moreover, unlike in Santa Fe, neither the allegations in the complaint nor any evidence suggest that adoption of the contested provisions by the

---

[2] Pursuant to AB 583 § 1, fees may paid in even-numbered years when registrations are renewed pursuant to California Governments Code § 86106.  (Compl. ¶ 21.)  Pursuant to § 86106, registrations are renewed between November 1 and December 31 of even-numbered years.  Cal. Gov't Code § 86106.  All plaintiffs are already registered and thus, would not be required to pay the new fees, if adopted, until the renewal of registration became due.

voters is "inevitable." See id. at 316.  As such, plaintiffs' reliance on SFISD is misplaced.[3]

Accordingly, because plaintiffs do not at this time confront "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," Babbitt, 442 U.S. at 298, the court concludes that plaintiffs have not met the requirements for constitutional ripeness.  See San Diego County Gun Rights Comm., 98 F.3d at 1133 ("To hold that [] claims are ripe for adjudication in the absence of any factual context would essentially transform district courts into the general repository of citizen complaints against every legislative action.").

**B.  Prudential Ripeness**

However, even assuming that plaintiffs have set forth sufficient injury to satisfy the constitutional component of ripeness, their claims fail to satisfy the requisites for prudential ripeness.[4]  It is well established the "problems of prematurity and abstractness may well present 'insuperable

---

[3] Similarly, the court finds that plaintiffs' broad reading of West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624 (1943), is unsupported.  The Barnette Court was not confronted with, nor did it address, the issue of pre-election justiciability.  Rather, the case before the Court involved the constitutional challenge to a regulation that had been adopted by the West Virginia Board of Education and enforced against children by expulsion and their parents by prosecution.  Id.

[4] The court notes that the prudential ripeness inquiry has been applied generally in the administrative law context and that in Principal Life Ins. Co. v. Robinson, the Ninth Circuit held that the prudential inquiry is not applicable in private contract disputes because such a case would unlikely have "wide-ranging and remote adverse consequences."  394 F.3d 665, 671 (9th Cir. 2005).  However, this case, which raises questions of the constitutionality of a proposed state statute, presents potential "consequences for many members of the general public, not just those directly in the immediate controversy."  Id. at 670.  As such, the prudential ripeness inquiry is applicable in this case.

9

obstacles' to the exercise of the Court's jurisdiction, even though the jurisdiction is technically present." In re Coleman, 560 F.3d 1000, 1006 (9th Cir. 2009) (quoting Socialist Labor Party v. Gilligan, 406 U.S. 583, 588 (1972)). In evaluating the prudential component of ripeness, courts must engage in a more thorough consideration, guided by two overarching considerations: "(1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration." Braren, 338 F.3d at 975. "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." Id. (quoting Winter v. Cal. Med. Review, Inc., 900 F.2d 1322, 1325 (9th Cir. 1989)); Coleman, 560 F.3d at 1009; see, e.g., Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803 (2003) (holding the matter was not ripe for judicial review where further factual development would "significantly advance our ability to deal with the legal issues presented") (internal quotation marks omitted); Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871 (1990) (regulation ordinarily not ripe for review "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him"); Earth Island Inst. v. Ruthenbeck, 490 F.3d 687, 695 (9th Cir.2007) (issue not fit for review absent proper factual context to aid court's determination); Natural Res. Def. Council, Inc. v. EPA, 22 F.3d 1125, 1133 (D.C. Cir.1994) (considering "whether consideration of

the issue would benefit from a more concrete setting" in determining whether an issue is "fit" under the Abbott test).

In this case, plaintiffs ask the court to decide the constitutionality of provision of proposed legislation.  In attempting to resolve these issues, numerous questions of statutory interpretation will likely arise.  See Vermont Soc'y of Ass'n Executives v. Milne, 779 A.D. 20 (Vt. 2001) (analyzing the constitutionality of a statute requiring lobby taxes after the legislation was effective and the taxes paid).  Examination of the legislative intent, including the title and summary, the analysis of the Legislative Analyst, and the pro and con arguments contained in the ballot pamphlet, Legislature v. Eu, 54 Cal. 3d 492, 504 (1991), would be relevant to ascertaining whether a constitutionally permissible construction is fairly possible.  See Arizonans for Official English v. Arizona, 520 U.S. 43, 78 (1997).  Further, even if plaintiffs were to succeed in their challenge to that part of AB 583 that imposes a tax on registered lobbyists, the question of severability would have to be addressed.  Under California law, the severability analysis requires examination of whether the remaining constitutional part of a statute "is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute." Gerken v. Fair Political Practices Comm., 6 Cal. 4th 707, 714 (1993).  Thus, the legislative history is highly relevant to this inquiry.  However, in this case, the ballot pamphlet will not be printed until March 2010.  Cal. Elec. Code §§ 9082, 9094.  As such, at this time, the court will not be

able to determine necessary issues using a full legislative history.

Moreover, as set forth above, the hardship to the parties of withholding court consideration is minimal.  It is possible that plaintiffs will experience no hardship at all; AB 583 may be defeated at the June 2010 primary election.[5]  Finally, if AB 583 becomes law and plaintiffs are compelled to pay a $700 fee on their lobbying activities in December 2010, they may then challenge the new law in the context of a concrete dispute.  See Lee v. Oregon, 107 F.3d 1382, 1391-92 (9th Cir. 1997) (holding that challenge to statute was not ripe because the plaintiffs failed to identify any hardship that would befall them if claims not considered beyond, at worst, a civil enforcement action and noting that such challenges could be brought at that time).

Accordingly, the court finds that plaintiffs' claims do not meet the requirements for prudential ripeness.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is GRANTED.

/////

/////

/////

/////

---

[5] Defendant also points out that even if AB 583 wins a majority vote, it may be that a rival measure will appear on the same ballot and win a larger majority, thus negating the tax to which plaintiffs object.  See Taxpayers To Limit Campaign Spending v. Fair Political Practices Comm., 51 Cal. 3d 744, 770 (1990) (when competing measures which comprehensively regulate the same subject pass at the same election, only the provisions of the measure receiving the highest affirmative vote take effect).

1       IT IS SO ORDERED.
2  DATED: June 15, 2009

4                                       FRANK C. DAMRELL, JR.
                                        United States District Judge